IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENSION FUND FOR NURSING HOMES | : | CIVIL ACTION |
| AND HEALTH CARE EMPLOYEES - | : | NO. 07-0313 |
| PHILADELPHIA AND VICINITY, | : | |
|       Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| RESTHAVEN NURSING CENTERS | : | |
| d/b/a I.H.S. at BROOMALL, | : | |
|       Defendant | : | |

O'NEILL, J.                                                                                              MAY            , 2008

MEMORANDUM

On January 24, 2007, plaintiff Pension Fund for Nursing Homes and Health Care Employees - Philadelphia and Vicinity filed a complaint against defendant Resthaven Nursing Centers d/b/a I.H.S. at Broomall. The complaint alleges violations of ERISA and breach of contract for failure to adequately remit pension contributions. Before me now is defendant's motion for summary judgment, plaintiff's response, and defendant's reply thereto.

BACKGROUND

Plaintiff is a multi-employer pension fund formed on July 1, 1994. Defendant is a nursing home whose employees are represented by the National Union of Hospital and Health Care Employees, District 1199C. Plaintiff was formed after the union contacted administrators of nursing homes regarding forming a pension plan for the nursing homes' union employees. Each nursing home employer negotiated a separate collective bargaining agreement with the union. The bargaining agreements differed with respect to the effective dates of participation and amount of employer contribution. Defendant and the union have been parties to a series of

1

collective bargaining agreements the provisions of which establish the terms and conditions of employment between union members and defendant. This dispute is based upon plaintiff's claim that defendant remitted fewer contributions to the pension fund than is due under the terms of the relevant collective bargaining agreement.

Defendant and the union entered into a collective bargaining agreement which covered a five year period and expired on June 30, 1995.  That agreement did not require defendant to make pension contributions.  Defendant and the union negotiated a subsequent collective bargaining agreement which covered the period from July 1, 1995, through June 30, 2000.  Pursuant to a Memorandum of Agreement attached to the 1995-2000 agreement defendant was required to contribute 4% of payroll effective as of the final pay period of the 1995-2000 collective bargaining agreement.  Essentially, defendant was not required to contribute to the pension plan for the duration of the 1995-2000 agreement with the exception of the final pay period prior to the expiration of said agreement.

The parties agree that as the expiration date of the 1995-2000 agreement approached representatives from defendant and the union met to renegotiate terms of the collective bargaining agreement to be entered for the period July1, 2000, through June 30, 2005.  The 2000-2005 collective bargaining agreement includes the following provision regarding pension contributions:

ARTICLE XXVII - PENSION

Effective July 1, 2001, for each Employee who has completed at least one year of continuous service, the Employer shall contribute four percent (4%) of the Employee's regular straight-time wages to the Pension Fund for Nursing Home and Health Care Employees - Philadelphia and Vicinity.  Such payments by the Employer to the Pension Fund based upon the previous month's payroll.  The

>above contribution rate shall be increased to five percent (5%) effective June 1, 2005.

(Pl's Mot. Summ. J., Exh 5. at 25). The parties also agree that beginning in July 2001, defendant remitted contributions at a rate of 4% of wages for regular, non-overtime hours worked but did not make contributions for vacation, holiday, sick leave, or other forms of benefit related compensation. Defendant made contributions in this manner for the duration of the 2000-2005 agreement.

The parties subsequently executed another collective bargaining agreement for the period July 1, 2005 through June 30, 2010. Prior to the execution of the 2005-2010 agreement the union proposed to increase the amount of defendant's pension contributions from "regular straight time wages" to "gross payroll." However, the contract language was not amended to included the union's proposal. Under the terms of the 2005-2010 agreement the rate of defendant's pension contributions was increased from 4% to 5% of regular straight-time wages.

A few months after the 2005-2010 collective bargaining agreement was executed plaintiff audited defendant's pension contributions. The auditor determined that defendant remitted contributions at a rate of 4% of non-overtime hours worked but did not make contributions for other types of compensation. Because defendant did not remit contributions for benefit related compensation the auditor concluded that defendant was delinquent in the amount of $23,499.94 for the period from January 1, 2004, through December 31, 12004. Defendant denies that it is delinquent and asserts that it remitted contributions in accordance with the terms of the 2000-2005 collective bargaining agreement. The parties disagree on the meaning of the term "regular straight time wages." Thus, they have a continuing dispute regarding whether a delinquency

exists.

Plaintiff subsequently filed the instant action seeking delinquent contributions, liquidated damages, attorneys' fees and costs. Plaintiff maintains that "regular straight time wages" include holiday, sick, and vacation time. Plaintiff asserts that during the contract negotiations there was little discussion regarding the phrase "regular straight time wages." Plaintiff also argues that because employers typically make contributions based on a percentage of gross wages there was no meeting of the minds regarding the phrase. Consequently, plaintiff concludes that a genuine issue of material fact exists. In it's motion for summary judgment defendant argues that the phrase "regular straight time wages" is clear, straightforward, and unambiguous. Defendant concludes that because there is no genuine issue of material fact summary judgment should be granted in its favor as a matter of law.

STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment has the burden of demonstrating that there are

no genuine issues of material fact.  Id. at 322-23.  If the moving party sustains the burden, the nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial.  See Anderson, 477 U.S. at 255.  Rule 56(e) provides that when a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The adverse party therefore must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion, and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).

DISCUSSION

I conclude that summary judgment should be granted in defendant's favor.  The disputed phrase in the 2000-2005 collective bargaining agreement is clear on its face, unambiguous, and is not subject to differing interpretations.  Plaintiff suggests that under the circumstances I am required to consider extrinsic evidence to determine whether an ambiguity exists.  Although I conclude that summary judgment should be granted as a matter of law based upon the express terms in the collective bargaining agreement I nevertheless reviewed the extrinsic evidence offered in support of the parties' differing interpretations.  After consideration of the extrinsic evidence I find that there is no genuine issue of material fact regarding the meaning of the phrase "regular straight time wages."

> Federal law governs the interpretation of a collective bargaining agreement. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957); Sheet Metal Workers Local 19 v. Keystone Heating & Air

5

> Conditioning, 934 F.2d 35, 40 (3d Cir.1991); Abbate v. Browning-Ferris Indus. of Elizabeth N.J., Inc., 767 F.2d 52, 55-56 (3d Cir.1985). Although a collective bargaining agreement differs from an ordinary contract, the meaning of a collective bargaining agreement may be determined by applying general rules of [state] contract law as long as federal labor law does not provide a conflicting rule." Keystone Heating, 934 F.2d at 40.
>
> It is the role of the court to interpret a written contract when "the terms and surrounding circumstances are unambiguous." Id. at 41; Griesmann v. Chemical Leaman Tank Lines, Inc., 776 F.2d 66, 72 & n. 9 (3d Cir.1985). However, in deciding whether a contract is clear or ambiguous, we do not simply determine whether, from our point of view, its words are ambiguous. Rather, we "hear the proffer of the parties and determine if there [are] objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings." Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir.1980). In these circumstances, a judge may "consider the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." Id.

Sheet Metal Workers, Local 19 v. 2300 Group, Inc., 949 F.2d 1274 (3d. Cir. 1991). In determining whether a term is ambiguous I "must consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation." Einhorn v. Fleming Foods of Pennsylvania, Inc., 258 F.3d 192 (3d Cir. 2001). Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning. Id .at 195.

Resolution of this matter rests upon interpretation of the language of the 2000-2005 collective bargaining agreement. Under Pennsylvania law, it is well established that the purpose of contract interpretation is to ascertain and effectuate the objectively manifested intentions of the contracting parties. See, American Flint Glass Workers Union, AFL-CIO v. Beaumont Glass Co., 62 F.3d 574, 581 (3rd Cir. 1995). In determining the meaning of a contract the initial resort should be to the four corners of the agreement itself. See, Washington Hosp. v. White, 889 F.2d

6

1294, 1300 (3d Cir.1989). Thus, the initial question before me is whether the phrase "regular straight time wages" is reasonably capable of only one construction. Id. at 1301. This is a question of law for the court. Id.; see also, Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993)

To determine whether a contract is capable of more than one construction, I must consider the proffer of the parties and determine whether there are objective indicia that the terms of the contract are susceptible of different meanings. See USX Corp. v. Penn Cent. Corp., 130 F.3d 562, 566 (3d Cir. 1997). A contract should be considered ambiguous if, after hearing evidence presented by the parties, the court determines that objective indicia exists to support the view that "the terms of the contract are susceptible of different meanings." Teamsters Indus., 989 F.2d at 135. If the terms are then considered ambiguous the factfinder must interpret the terms. Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir.1980); Matter of Nelson Co., 959 F.2d 1260, 1263 (3d Cir.1992).

First I will consider the four corners of the 2000-2005 collective bargaining agreement. Again, it provides, in relevant part:

ARTICLE XXVII - PENSION

Effective July 1, 2001, for each Employee who has completed at least one year of continuous service, the Employer shall contribute four percent (4%) of the Employee's regular straight-time wages to the Pension Fund for Nursing Home and Health Care Employees - Philadelphia and Vicinity. Such payment by the Employer to the Pension Fund based upon the previous month's payroll. The above contribution rate shall be increased to five percent (5%) effective June 1, 2005.

(Pl's Mot. Summ. J., Exh. 5 at 25).

As an initial matter I conclude that the collective bargaining agreement is clear and

unambiguous on its face. Plaintiff asserts that "regular straight time wages" means any non-overtime payments employees earned including vacation, holiday, and sick leave. Plaintiff's interpretation of the language contained in the agreement is not a reasonable alternative to that asserted by defendant. "The strongest external sign of agreement between contracting parties is the words they use in their written contract." Mellon Bank, N.A., 619 F.2d at 1009. Despite plaintiff's assertions to the contrary the term "regular" modifies the remainder of the phrase "straight-time wages." As used in the agreement "regular" clarifies the type of straight-time wages for which defendant is responsible for making contributions. Otherwise the word is redundant and of no effect. The rules of contract interpretation prohibit this result. Under Pennsylvania law when interpreting a contract the court must determine the intent of the parties and effect must be given to all provisions in the contract. Western United Life Assur. Co. v. Hayden, 64 F.3d 833 (3d Cir. 1995); see also, New Wrinkle, Inc. v. John L. Armitage & Co., 238 F.2d 753 (3d Cir. 1956)(court concluded that a written contract must be construed to give effect to all of its parts and any construction which would render an agreement meaningless should be avoided; the language used must be accorded a reasonable meaning).

In addition to determining that the disputed phrase is clear and unambiguous I also conclude that summary judgment should be granted in defendant's favor based upon review of the entire collective bargaining agreement. Other provisions of the 2000-2005 agreement specify different types of contributions defendant is required to make. (See, e.g., Pl.'s Mot. Summ. J, Exh. 5 at 26). Various provisions of the agreement differentiate between the different types of pay employees earn and require differing calculations based on the type of earnings. Id. at 14-18. For example, the 2000-2005 agreement requires defendant to contribute to a training fund at the

rate of one and one half percent (1 1/2%) "of payroll." Id. at 26.  Use of the term "payroll" requires defendant to make contributions based on a percentage of all types of earnings including vacation, holiday and sick leave wages.  As defendant notes other provisions of the agreement refer to "regular pay" as differentiated from "vacation pay," "holiday pay," or "sick leave."  Moreover, the agreement calculates both "vacation pay" and "holiday pay" based upon the an employee's "regular pay." Id. at 14, 16.  Sick leave is also calculated on the basis of regular pay but may be paid at a rate different than regular pay.  Id. at 17.

Pennsylvania law requires that I determine the intent of the parties and give effect to all provisions when interpreting a contract.  See Western United, 64 F.3d at 837; see also, Mellon Bank, N.A., 619 F2d. at 1009, 1010.  The 2000-2005 collective bargaining agreement contains provisions which specify the various types of earnings, contributions, and pay rates.  To give effect to the term "regular" as it modifies "straight time wages" I must differentiate between regular wages and holiday, vacation, and sick wages because those terms are utilized and defined differently throughout the agreement.  Therefore I conclude that according to the plain language of the entire collective bargaining agreement the phrase "regular straight time wages" does not include vacation, holiday or sick leave payments.  As utilized in the 2000-2005 agreement the phrase "regular straight-time wages" is not ambiguous.

Although I conclude that summary judgment is warranted based an examination of the 2000-2005 collective bargaining agreement plaintiff asserts that I am required to consider extrinsic evidence to determine whether the disputed phrase is ambiguous.  Upon consideration of the extrinsic evidence I conclude that summary judgment should be granted in defendant's favor because there is no genuine issue of material fact regarding the asserted ambiguity.  The

extrinsic evidence I considered included the " structure of the collective bargaining agreement, the bargaining history, and the conduct of the parties that reflects their understanding of the contract's meaning." See, Einhorn, 258 F.3d at 195.  I have already discussed the structure of the collective bargaining as it relates to the differences evident in the agreement with respect to the terms "payroll," "regular pay," "vacation, pay," "holiday pay," and "sick leave."  Review of the parties' bargaining history also leads to the conclusion that the phrase "regular straight time wages" was not intended to include benefit related compensation.  In its response to defendant's motion for summary judgment plaintiff admits that it originally sought to require defendant to contribute 4% of gross payroll and that the parties eventually agreed to limit defendant's contributions to 4% of regular straight-time wages.  The early collective bargaining agreements did not require defendant to make any pension contributions.  The 1995-2000 agreement only required defendant to make one contribution - based upon a percentage of "payroll"- for the final pay period of that contract.  I find it significant that the language of the 1995-2000 agreement was changed when the parties renegotiated the 2000 - 2005 agreement.  Instead of requiring defendant to make pension contributions based upon a percentage of payroll, the 2000-2005 agreement specifies that contributions are to be remitted based upon "regular straight time wages."  I can only conclude that defendant bargained for the limiting language.  If the parties intended that contributions would be made based upon other forms of compensation the 2000-2005 agreement could have included expansive language or specified that the contributions were required to be based upon wages including holiday, vacation, and sick pay as those terms are utilized elsewhere in the agreement.   Plaintiff claims that during contract negotiations defendant's representative proposed the term "regular straight time wages" but never informed

plaintiff's representative that the phrase excluded benefit related wages. However, defendant was not required to do so. Each party bargained for its respective benefits of the agreement and subsequently executed it.

In addition to the above the negotiations for the 2005-2010 collective bargaining agreement further demonstrate the limiting intention of the disputed phrase contained in the 2000-2005 agreement. At expiration of the 2000-2005 agreement plaintiff sought to increase defendant's contributions to the all inclusive term "gross pay." (Pl.'s Mot. Summ. J., Exh. 6). Again, the parties bargained and agreed to maintain contributions to a percentage of "regular straight time wages." Defendant bargained for the limitations contained in the agreement and I cannot expand the meaning of the phrase to include terms which could have been specified or clarified in the agreement. I cannot conclude that the phrase "regular straight time wages" is ambiguous because - as plaintiff's posit - defendant never advised plaintiff of the limiting effect of the phrase. Similarly, I cannot conclude that the term is ambiguous because there was little or no discussion about whether regular straight time wages included vacation, holiday, or sick pay.

Finally, I considered the conduct of the parties and found that their conduct did not evidence an intention for the phrase "regular straight-time wages" to include benefit related pay. "The past dealings of contracting parties pursuant to an agreement are probative of the parties' intent. See, Restatement (Second) of Contracts § 223(2) (1981); Cities of Campbell v. Federal Energy Regulatory Comm'n, 770 F.2d 1180, 1191 (D.C.Cir.1985). Evidence of a course of conduct is particularly compelling when it occurs over a substantial time period. Old Colony Trust Co. v. City of Omaha, 230 U.S. 100, 118, 33 S.Ct. 967, 972, 57 L.Ed. 1410 (1913)." Teamsters, 989 F.2d at 137. For the duration of the 2000-2005 collective bargaining agreement

defendant made contributions in accordance with the plain meaning of the phrase "regular straight time wages." Defendant did not remit contributions for benefit related wages. For five years plaintiff did not complain about or object to the amount of defendant's contributions. Plaintiff only conducted an audit of defendant's contributions after the 2005-2010 negotiations concluded and the contract was not amended as plaintiff desired. As the expiration date of the 2000-2005 agreement approached plaintiff proposed to require defendant to base its contributions on the basis of gross payroll. Defendant rejected plaintiff's proposal, the 2005-2010 was executed, and shortly thereafter defendant was audited, determined delinquent, and plaintiff subsequently filed the instant action. Because defendant regularly submitted contributions in accordance with the clear meaning of the phrase "regular straight time wages," made no pension contributions for benefit related wages for five years, and also because plaintiff did not object thereto for five years I find that the conduct of the parties weighs in favor of determining that the parties did not intend for defendant's pension contributions to include vacation, holiday, or sick pay. Accordingly, I conclude that even based upon an examination of the extrinsic evidence offered in support of the parties' respective interpretations of the phrase "regular straight time wages" the phrase is not ambiguous and there is no genuine issue of material fact.

     An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENSION FUND FOR NURSING HOMES | : | CIVIL ACTION |
| AND HEALTH CARE EMPLOYEES - | : | NO. 07-0313 |
| PHILADELPHIA AND VICINITY, | : | |
|     Plaintiff | : | |
|   v. | : | |
| | : | |
| RESTHAVEN NURSING CENTERS | : | |
| d/b/a I.H.S. at BROOMALL, | : | |
|     Defendant | : | |

## **ORDER**

AND NOW, this 20th day of May 2008, upon consideration of defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), plaintiff's response and defendants' reply thereto, it is ORDERED that defendant's motion is GRANTED. Judgment is entered in favor of defendant and against plaintiff.

/s/ Thomas N. O'Neill, Jr.
_____
THOMAS N. O'NEILL, JR., J.